**FILED**

**NOVEMBER 19, 2007**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 50229**

| | |
|---|---|
| STANLEY OZAROWSKI, *Individually and on behalf of all others similarly situated*, | ) ) ) ) |
| Plaintiffs, | ) Case No. _____ |
| | ) |
| vs. | ) |
| | ) |
| GENERAL MOTORS CORPORATION, | ) |
| | ) |
| *Serve at:* | ) ) ) ) ) |
| Defendant. | ) |

**JUDGE REINHARD
MAGISTRATE JUDGE MAHONEY**

## CLASS ACTION COMPLAINT

Plaintiff, Stanley Ozarowski, individually and on behalf of all others similarly situated, for his Class Action Complaint against General Motors Corporation (hereinafter "GM"), alleges the following:

### CASE OVERVIEW

1.     Plaintiff brings this action on behalf of himself and a class of Saturn vehicle owners in the State of Illinois (the "Class State") whose defectively designed Saturn Vti transmissions have experienced a failure that GM failed or refused to fully remedy.

2.     GM manufactures and sells vehicles worldwide under the Saturn brand name, among others.

3.     From 2002 until at least 2004, GM manufactured, sold and/or distributed certain vehicles containing the Saturn Vti transmission. The Vti transmission is

inherently prone to premature failure due to its defective design and/or due to negligent manufacture. When the Vti transmission fails, it renders the vehicle inoperable and necessitates very costly repairs, often exceeding the (now diminished) value of the vehicle.

4.      Upon information and belief, GM was aware when it introduced the Vti transmission in 2002 of the inherent design flaws and problems with the Vti, and GM was aware that the Vti transmissions it sold were likely to experience premature failure. Despite this exclusive knowledge, GM failed to disclose this material information to consumers.

5.      Many owners of Saturn Vti transmissions have had to repair or replace their Vti transmissions three or more times, and many Saturn customers have been left without transportation because they are unable to afford the costly transmission repairs or replacements needed to return their vehicles to operating condition.

6.      Often such customers have attempted to trade in their Saturn vehicles, only to be offered a trade-in amount by the Saturn dealership that was less than the cost of a Vti transmission repair/replacement and which was significantly less than the anticipated fair market value of the vehicle. This despite the fact that when the Vue was introduced in 2002, it had a minimum manufacturer's suggested retail price (MSRP) of more than $16,000.00.

7.      Although GM recently has publicly acknowledged an unusually high failure rate on vehicles with the Vti transmission, GM has failed or refused to remedy the problem. For customers with vehicles within the written warranty period, GM has done no more than to temporarily repair the Vti transmissions or to replace them with other

similarly defective and inherently failure-prone Vti transmissions.  GM has refused to take any action at all to remedy this concealed defect for those customers with vehicles outside a voluntarily extended warranty period.  In no case has GM adequately remedied the defect for any member of the proposed Class by providing a vehicle not containing a defective Vti transmission.

8.     In short, GM is believed to have sold vehicles in which it knew the transmissions were likely to fail prematurely, and when such failure occurs, it renders the vehicles virtually worthless absent costly transmission repairs or replacement.

### JURISDICTION AND VENUE

9.     Plaintiff Stanley Ozarowski is a resident of Fox River Grove (McHenry County), Illinois who purchased a 2003 Saturn Vue in Schaumburg (Cook County), Illinois.

10.     GM is a Delaware corporation with its principal place of business in the State of Michigan.

11.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1132(d) because (a) it is a class action; (b) there are more than 100 class members; (c) the amount in controversy exceeds $5 million, exclusive of interest and costs; and (d) at least one member of the Class is a citizen of a State different from at least one Defendant.

12.     Personal jurisdiction over GM is proper because GM transacts substantial business within this State, has made contracts or promises substantially connected with this State, and has otherwise subjected itself to the general jurisdiction of this Court and the other courts in this State.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, such as the purchase by plaintiff Stanley Ozarowski and many other class members of their Saturn vehicles from GM in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

14.     The Saturn Vti transmission is a "continuously variable" transmission (CVT).  Unlike a conventional automatic transmission, which uses traditional gears to shift at a few fixed points, a CVT shifts through the use of a belt or chain that runs through pulleys that move closer together or farther apart.

15.     Rather than using a chain, which is more durable than a belt, the Saturn Vti utilizes a steel belt, known as a "thrust belt."  Due to the inherently defective design of the Vti transmission, the thrust belt and the Vti transmission are extraordinarily prone to premature failure.  For example, upon information and belief, the transmission is defectively designed in that the engine and/or the pump are underpowered to apply sufficient pressure on the thrust belt.  As a result the thrust belt slips, and the resulting friction between the thrust belt and the pulleys causes the belt to wear until it prematurely fails.

16.     When the thrust belt and/or the transmission fails, either it causes hesitation in the movement or acceleration of the vehicle, leading to an unreasonably dangerous driving condition, or it renders the vehicle completely immobile.  In either event, this failure requires costly repairs or transmission replacement.  On information and belief, the average repair or replacement cost to the consumer exceeds five thousand dollars ($5,000.00).

17.     Upon information and belief, this design defect and the accompanying inherent risk of premature transmission failure could have been avoided by using a chain instead of a belt and/or by increasing the power to the transmission, perhaps among other remedies.

18.     The defectively designed/manufactured Vti transmissions at issue in this action are contained in 4-cylinder Saturn Vues and Saturn Ions in model years 2002-2004, perhaps among other Saturn vehicle models.

19.     Upon information and belief, GM was aware when it introduced the Vti transmission that it was inherently prone to premature failure.  For example, in 1999 or 2000, GM recognized that "concerns exist over the durability of the belt under continuous high-load operations."

20.     So concerned was GM over the quality and durability of the Vti transmission, and so plagued was the Vti with problems, that its initial launch was delayed by several months.

21.     Despite this delay in the launch of the Vti, upon information and belief, Saturn did not undertake adequate or customary quality control measures to ensure that the Vti was sufficiently tested and refined for full-scale production and sale to consumers. For example, upon information and belief, GM and/or its suppliers bypassed the production startup phase in which small quantities of vehicles or components typically are tested and quality-controlled prior to initiation of full-scale production.

22.     GM did not inform the Class that GM had bypassed the "startup" phase of production, or that it had failed to undertake adequate or customary quality control measures concerning the Vti transmission.

23.    In April of 2003, GM further recognized excessive durability problems with the Vti transmission when it authorized its retailers to perform full off-vehicle warranty repairs of the Vti.

24.    In early 2004, GM again recognized durability problems with the Vti transmission when it voluntarily extended the warranty on vehicles containing the Vti from 3 years / 36,000 miles to 5 years / 75,000 miles.  However, this temporary remedy was illusory because repairs under the voluntarily extended warranty failed to replace the defectively designed Vti transmission with a durable non-Vti transmission, and any replacement Vti transmissions carried the same defects and inherent elevated risk of premature failure.

25.    Transmissions are designed to, and ordinarily do, function for periods (and mileages) substantially in excess of those specified in GM's Saturn warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the transmission would fail for significantly longer than the limited times and mileages identified in Saturn's express warranties, including the voluntarily extended warranty.

26.    Upon information and belief, GM, through (1) its own records of customers complaints, (2) dealership repair records, (3) records from the national Highway Traffic Safety Administration (NHTSA), and (4) other various sources, was well aware of the alarming failure rate of Vti transmissions but failed to notify customers of the nature and extent of the problems with the Vti transmission and failed to provide an adequate remedy.

27.    Members of the class could not have discovered the latent Vti transmission defects through any reasonable inspection of their vehicles prior to purchase.

28.    GM failed adequately to research, design, test and/or manufacture the Vti transmission before warranting, advertising, promoting, marketing, and selling it as suitable and safe for use in an intended and/or reasonably foreseeable manner.

29.    GM advertised, promoted, marketed, warranted, and sold through the stream of commerce to Plaintiffs and the Class vehicles containing Vti transmissions that GM knew or reasonably should have know were dangerously defective, and which otherwise would not perform in accordance with Plaintiff's and the Class members' reasonable expectations that the vehicles would not suffer an inherent, dangerous, disabling defect, and that the vehicles would be safe and suitable for their intended and reasonably foreseeable use.

30.    GM expressly warranted the affected vehicles to be free from defects in materials or workmanship for a period of 36 months or 36,000 miles.

31.    Buyers, lessees, and other owners of the affected vehicles were without access to the information concealed by GM as described herein, and therefor reasonably relied on GM's representations and warranties regarding the quality, durability, and other material characteristics of their vehicles.  Had these buyers and lessees known of the defect and the danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles than the amounts they actually paid, or would not have purchased the vehicles.

32.    By concealing the safety risk associated with the vehicles, GM has forced consumers to bear the risk of injury to themselves and other persons, as well as to property, as a result of the transmission failure, as well as the financial loss associated with the diminished value of their vehicles.  Had GM revealed this information, consumers would not buy or lease, or would pay substantially less for, vehicles equipped with the defective Vti transmissions.

33.    As a result of GM's misconduct, Plaintiff and the Class have suffered actual damages in that their Saturn vehicles are hazardous to drive, if operable at all, resulting in loss of use, costly repairs, and substantially diminished value, including without limitation diminished resale value.  Further, the defective Vti transmission is not a discreet, modular or incidental part of the vehicle but, rather, is an essential part of the drive train and is integral to the safe operation of the vehicle.

34.    The cost to repair or replace the defective Vti transmission is expected to be between $4,000.00 and $8,000.00 per vehicle.  Because of the relatively small size of Plaintiff's and the Class members' claims based on repair costs and/or loss of vehicle market value, and because most have only modest resources as compared to GM, it is unlikely that individual Class members could afford to seek recovery against GM.  A class action is, therefore, the only reasonable means by which Class members can obtain relief.

35.    GM's knowledge of the fact that the Vti transmission is inherently defective and prone to sudden failure, and that it would need costly repairs and/or replacement, gave GM more than adequate opportunity to cure the problem, which

opportunity it failed to timely undertake.  Upon information and belief, GM was alerted

to this problem by:

a)   GM's own testing and knowledge prior to the launch of the Vti transmission in 2002, including without limitation that which led to the delays in initial production;

b)   Excessive warranty claims relating to premature transmission failure;

c)   Reports of transmission failure to the National Highway Traffic Safety Administration (NHTSA);

d)   Additional complaints registered directly from consumers;

e)   Reports from GM's dealerships and authorized repair facilities regarding the nature and frequency of the premature transmission failure;

f)   Discussions in internet chat rooms, forums, and list serves sponsored by GM or, if not sponsored by GM, monitored by GM's employees; and

g)   Other sources.

### TOLLING OF STATUTES OF LIMITATION

36.   Any applicable statute of limitations has been tolled by GM's knowing

and active concealment and denial of the facts as alleged herein.  Plaintiff and the Class

have been kept ignorant of vital information essential to the pursuit of these claims,

without any fault or lack of diligence on their part.  Plaintiff and the Class could not

earlier have reasonably discovered the true, latent defective nature of the Vti

transmission.

37.   GM was and is under a continuing duty to disclose to Plaintiff and the

Class the true character, quality, and nature of the Vti transmission.  Because of GM's

knowing, affirmative, and/or active concealment of the true character, quality and nature

of the Vti transmission problems with the vehicles at issue, GM is estopped from relying on any statutes of limitation in defense of this action.

CLASS REPRESENTATIVE ALLEGATIONS

38.     Plaintiff Stanley Ozarowski purchased a used 2003 Saturn Vue with a Vti transmission on October 14, 2002 from a Saturn dealership in Schaumburg, Illinois for approximately $22,683.00.

39.     Mr. Ozarowski had repeated problems with the vehicle during the voluntarily extended 75,000 mile warranty period which appeared to be transmission-related, such as loss of power to the vehicle.

40.     During the voluntary extended 75,000 mile warranty period, parts on the Vti transmission were replaced after Mr. Ozarowski complained to Saturn of Schaumburg about transmission problems.  Parts on the Vti transmission were replaced when the vehicle had the following mileages: 32,394; 36,651; and 36,878.

41.     However, when the vehicle reached 83,665 miles (just outside the warranty coverage) the transmission failed and was towed to Saturn of Barrington and then to Saturn of Dundee.  On October 30, 2007, Saturn of Dundee diagnosed a transmission failure.  The dealership replaced the transmission at that time, at a cost for labor of $1,200.00 to Mr Ozarowski.

CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements for maintaining this action under both state and federal law.

43.     The class of persons on whose behalf this action is brought is defined as

follows (the "Class"):

> All persons in the State of Illinois who have owned a Saturn vehicle containing a
>
> Vti transmission which experienced a failure that GM failed or refused to fully
>
> remedy.

Excluded from the Class are: (1) members of the federal judiciary in the foregoing states,

and (2) GM, its employees, and any entity in which GM has a controlling interest,

including officers and directors and the members of their immediate families.  Also

excluded from the Class are individuals and entities with claims against GM for personal

injuries as a result of the defect alleged herein.

44.     The members of the Class, being geographically dispersed and numbering

at least in the tens of thousands, are so numerous that joinder of them in a single action is

impracticable.  According to GM's website, GM sold approximately 75,000 Vues in

2002, 82,000 in 2003, 87,000 in 2004, and 92,000 in 2005.  GM sold approximately

6,000 Ions in 2002, 117,000 in 2003, 104,000 in 2004, and 101,000 in 2005.[1]  Even if

only a small fraction of these vehicles contained the Vti transmission, the Class would

number in the tens of thousands.

45.     Plaintiff can and will fairly and adequately represent and protect the

interests of the Class, as (a) the claims of Plaintiff are substantially similar (if not

identical to) those of absent Class members, (b) there are questions of law or fact that are

common to the Class and that overwhelmingly predominate over any individual issues,

such that by prevailing on his own claims, Plaintiff necessarily will establish Defendants'

---

[1] http://www.gm.com/company/investor_information/sales_prod/hist_sales.html.

liability as to all Class members, (c) without the Class representation provided by Plaintiff, virtually no Class members will receive legal representation or redress for their injuries, (d) Class counsel have the necessary financial resources to adequately and vigorously litigate this class action, and (e) Plaintiffs and Class counsel are aware of their fiduciary responsibilities to the Class Members and are determined diligently to discharge those duties by vigorously seeking the maximum possible recovery for the Class.

46.    Numerous questions of law and fact that are common to all class members, including, *inter alia*:

(a)    Whether Saturn vehicles containing the Vti transmission are defective in that: they fail to perform in accordance with the reasonable expectations of ordinary consumers; they are not fit and safe for their ordinary, intended, and foreseeable use; their risks and dangers outweigh their benefits, if any; and/or they would not be offered for sale by a reasonably careful manufacturer or seller who knew of their defective nature;

(b)    Whether GM knew of the defective and unreasonably dangerous nature of vehicles equipped with the Vti transmission at the time those vehicles were sold;

(c)    Whether GM represented, through its advertising, warranties and other representations, that the Vti-equipped Saturn vehicles had characteristics that they did not actually have, or omitted to disclose material facts and actual characteristics regarding the Vti-equipped Saturn vehicles;

(d)    Whether GM made any affirmations of fact or promises relating to the Vti-equipped vehicles that became a basis of the bargain between seller and buyer, and thereby created an express warranty that the vehicles would conform to those affirmations or promises

(e)    Whether the Vti-equipped vehicles conform(ed) to GM's express warranties;

(f)    Whether the Vti-equipped vehicles are merchantable, pass without objection in the trade, and are fit for their ordinary and intended purposes;

(g)    Whether the Vti-equipped vehicles have the value represented by GM;

(h)    Whether Plaintiff and the Class are entitled to compensatory damages; and

(i)    Whether GM's active concealment and failure to disclose the inherently defective nature of the Vti transmission constituted fraud or misrepresentation.

47.    These common questions of law or fact predominate over any questions or issues affecting individual Class members.

48.    A class action is an appropriate method for the fair and efficient adjudication of this controversy, given that:

(a)    Common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the Court and the parties in litigating the common issues on a classwide instead of a repetitive individual basis;

(b)    The size of each Class member's relatively small claim is too insignificant to make individual litigation an economically viable alternative, such that as a practical matter there is no "alternative" means of adjudication to a class action;

(c)    Few Class members have any interest in individually controlling the prosecution of separate actions (and any who do may opt out);

(d)    Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members;

(e)    Despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating

similar claims on a common basis, will enable this class action to be litigated on a

cost-effective basis, especially when compared with repetitive individual litigation; and

        (f)      No unusual difficulties are likely to be encountered in the

management of this class action insofar as GM's liability turns on substantial questions of

law or fact that are common to the Class and that predominate over any individual

questions.

## COUNT I – STATUTORY CONSUMER FRAUD

        49.      Plaintiff incorporates by reference the allegations in all preceding

paragraphs as if fully set forth herein.

        50.      At all relevant times there has been in effect the Illinois (the "Consumer

Protection Statute").  Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.* ("ICFA"),

which prohibits unfair or deceptive practices.

        51.      Plaintiff and members of the Class are "consumers," the Saturn vehicles at

issue are "goods" or "merchandise," and the purchase of the Saturn vehicles at issue is a

"consumer transaction" within the meaning of ICFA.

        52.      The vehicles at issue in this action were defectively designed and/or

manufactured, as further described above.

        53.      As a result of the defective design and/or manufacture of the vehicles, the

Vti transmission is inherently prone to premature failure.  When the Vti transmission

fails, it renders the vehicle inoperable and necessitates very costly repairs, often

exceeding the (diminished) value of the vehicle, and may create unreasonably hazardous

driving conditions when the failure occurs while the vehicle is being driven.

54.    Upon information and belief, GM had exclusive knowledge of the defect at the time the vehicles were sold, as further described above.

55.    Despite GM's knowledge of the defect in the vehicles, GM failed or refused to disclose the existence of this defect (a material fact that GM was obliged to disclose) to Plaintiff and members of the Class at the time they purchased their vehicles.

56.    GM intended, and continues to intend, that Plaintiff and the Class rely on the omission of the material fact that the vehicles are defective.  This omission is contrary to representations, including partial representations, actually made by GM regarding the transmissions and vehicles at issue, as further described above.

57.    In failing to inform consumers of the defective Vti transmissions, GM has engaged in an unfair, unconscionable, and deceptive act prohibited by the Consumer Protection Statute.

58.    The omission of this material fact is the type of omission which is likely to and tends to mislead or deceive reasonable consumers acting reasonably under the circumstances.

59.    But for GM's deceptive and unfair act of concealing from Plaintiffs and the Class the existence of the defect in the vehicles, Plaintiff and the Class members would not have purchased the vehicles or would not have been willing to pay as much as they did for the vehicles.

WHEREFORE, on behalf of himself and all others similarly situated, Plaintiff requests the following relief in favor of himself and the Class and against GM on Count I as follows:

A.      An order certifying the Class and directing that this case proceed as a class action;

B.      Judgment in favor of Plaintiff and the members of the Class in amount of actual damages to be determined at trial;

C.      An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest; and

D.      Such other and further relief as the Court deems appropriate under the circumstances.

### COUNT II – BREACH OF EXPRESS WARRANTIES

60.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

61.     GM expressly warranted the vehicles at issue to be free of defects in factory materials and workmanship at the time of sale and for a period of three years or 36,000 miles and, further, that GM would, at no cost, correct any vehicle defect related to materials or workmanship during the warranty period.  Such warranties are express warranties within the meaning of Section 2-313 of the Uniform Commercial Code (UCC) as adopted in Illinois and are further governed by the Magnuson-Moss Warranty Act. 810 ILCS 5/2-313 and 15 U.S.C. §§ 2301, *et seq.*

62.     More specifically, GM's "New Car Limited Warranty" promises that GM "will provide for repairs to the vehicle" during the warranty period and that "[t]his warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring" during the warranty period.

63.     Through advertising and promotional literature, GM boasted that the Vti transmission represented an "evolutionary step in automatic transmission technology" and touted the Vti's "robust design," "excellent performance," and "unobtrusive operation." GM's promotional literature highlighted that the Vti's "torque converter clutch is constructed of carbon fiber *for durability*" (emphasis added). GM represented that the Vti-equipped Saturn Vue was "tough, versatile [and] at home in almost any environment" and that that the Vti-equipped Ion was "specifically designed and engineered for whatever's next."

64.     It is anticipated that Plaintiff will obtain through discovery additional examples in GM's possession of advertising statements touting the durability of the Vti transmission.

65.     GM's representations in its advertising, promotional material, and warranty information became a basis of the bargain between GM and the Plaintiff Class.

66.     Upon information and belief, none of GM's advertising or promotional literature disclosed the Vti's design or manufacturing defects, GM's failure to utilize adequate or customary quality control measures, the inherent unreliability of the Vti, or the elevated and unreasonable risk of a transmission failure that would render the vehicle dangerous and/or inoperable.

67.     At the time of sale and forward, GM has breached these express warranties by selling to Plaintiff and the Class vehicles equipped with defective Vti transmissions that are, by design, unsafe, subject to extreme premature wearing and failure, and likely to cause serious injury to Plaintiff and Class members – if their

vehicles are even operable – and/or by refusing to adequately repair or replace their transmissions.

68.    As a direct and proximate cause of GM's breach of express warranties, Plaintiff and the Class have suffered actual damages and are threatened with irreparable harm by virtue of an elevated and unreasonable risk of serious bodily injury.

69.    Any limitation on the duration of GM's express warranties is unconscionable within the meaning of Section 2-302 of the UCC, and therefore is unenforceable in that, among other things, vehicles with Vti transmissions contain a latent defect of which GM was actually or constructively aware at the time of sale, and purchasers lacked a meaningful choice with respect to the terms of the warranty due to unequal bargaining power and a lack of warranty competition.

70.    Any attempt by GM to repair a defective Vti transmission or to replace one defectively designed Vti transmission with another defectively designed Vti transmission within the warranty period could not satisfy GM's obligation to correct defects under the warranty.  The design defect in the Vti transmission - which unreasonably elevates the risk of premature failure, immobility and/or dangerous loss of operability of the vehicle - cannot be remedied through the continued use of a defective Vti transmission.

71.    Any otherwise applicable notice requirement was met by the filing of this action, and because GM had notice of the defect in Vti-equipped vehicles long before Plaintiff and the Class but did nothing to adequately remedy the defect.

WHEREFORE, on behalf of himself and all others similarly situated, Plaintiff requests the following relief in favor of himself and the Class and against GM on Count II as follows:

    A.    An order certifying the Class and directing that this case proceed as a class action;

    B.    Judgment in favor of Plaintiff and the members of the Class in amount of actual monetary damages to be determined at trial;

    C.    Specific performance of GM's express and implied warranties, striking the durational limits of the warranties as unconscionable;

    D.    An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest; and

    E.    Such other and further relief as the Court deems appropriate under the circumstances.

### COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

72.    Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

73.    Section 2-314 of the Uniform Commercial Code and the Magnuson-Moss Warranty Act govern the implied warranty of merchantability in this class action.  *See* 810 ILCS 5/2-314 and 15 U.S.C. §§ 2301, *et seq.*

74.    As a seller and manufacturer of vehicles, GM is a "merchant" within the meaning of the UCC.

75.    The vehicles at issue in this action are "goods" as defined in the UCC.

76.    Implied in the sale of the vehicles is a warranty of merchantability that requires, among other things, that the vehicles pass without objection in the trade and are fit for the ordinary purposes for which the vehicles are used.

77.    Because the vehicles are defective, as a result of being equipped with a defective Vti transmission as further described above, the vehicles are not able to function in their ordinary capacities and were therefore not merchantable at the times they were sold, as impliedly warranted by GM.

78.    GM was put on notice of the defect by the numerous complaints that GM received concerning the defect, by its own prior knowledge, and by the filing of this action.

79.    Any purported limitation on remedies on the part of GM causes the warranty to fail of its essential purpose and is unconscionable under the circumstances.

80.    The defect in the vehicles renders them not merchantable and thereby proximately caused Plaintiff and the Class members who purchased them to suffer damages in an amount to be ascertained at trial.

WHEREFORE, on behalf of himself and all others similarly situated, Plaintiff request the following relief in favor of himself and the Class and against GM on Count III as follows:

A.    An order certifying the Class and directing that this case proceed as a class action;

B.    Judgment in favor of Plaintiff and the members of the Class in amount of actual monetary damages to be determined at trial;

C.      Specific performance of GM's express and implied warranties, striking the
        durational limits of the warranties as unconscionable;

D.      An order granting reasonable attorneys' fees and costs, as well as pre- and
        post-judgment interest; and

E.      Such other and further relief as the Court deems appropriate under the
        circumstances.

### COUNT IV – UNJUST ENRICHMENT

81.     Plaintiff incorporates by reference the allegations in all preceding
paragraphs as if fully set forth herein.

82.     This Count is brought against GM pursuant to the common law doctrine of
unjust enrichment.

83.     The vehicles that GM manufactured and sold containing the Vti
transmission are defective because the Vti transmission is defectively designed and or
manufactured, as further described above.

84.     Upon information and belief, GM had knowledge of the defect in the
vehicles at the time of sale, as further described above.

85.     Despite GM's knowledge of the defect in these vehicles, GM failed to
disclose the existence of this defect (a material fact) to Plaintiff and the Class when they
purchased their vehicles.

86.     Plaintiff and the Class conferred upon GM, without knowledge of the
design defect, payment for their vehicles, benefits which were non-gratuitous.

87.     GM accepted or retained the non-gratuitous benefits conferred by Plaintiff
and the Class despite GM's knowledge of the design defect in the vehicles.  Retaining the

benefits conferred upon GM by Plaintiff and the Class under these circumstances made GM's retention of these benefits unjust and inequitable.

88.     Because GM's retention of the benefits conferred by Plaintiff and the Class is unjust and inequitable, GM must pay restitution in a manner established by the Court.

WHEREFORE, on behalf of himself and all others similarly situated, Plaintiff request the following relief in favor of himself and the Class and against GM on Count IV as follows:

A.     An order certifying the Class and directing that this case proceed as a class action;

B.     Judgment in favor of Plaintiff and the members of the Class in amount of actual monetary damages to be determined at trial;

C.     An order equitably estopping GM from denying warranty coverage of the Vti transmission after the expiration of the unconscionable durational limits of the express and implied warranties;

D.     An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest; and

E.     Such other and further relief as the Court deems appropriate under the circumstances.

Dated:  November 19, 2007                    Respectfully submitted,


                                             **STANLEY OZAROWSKI,**

                                             **Class Plaintiff,**

                                             By: s/ Jonathan B. Piper
                                                     One of His Attorneys

                                               Jonathan B. Piper #6196071
                                               **THE LAKIN LAW FIRM, P.C.**
                                               300 Evans Avenue, P.O. Box 229
                                               Wood River, Illinois 62095-0229
                                               Phone: (618) 254-1127

                                             **Attorney for Plaintiff
                                             and the Proposed Class**